11 CV 2279

JUDGE McMAHON

**THE ROSEN LAW FIRM, P.A.**
Timothy W. Brown, Esq. (TB 1008)
  Email: tbrown@rosenlegal.com
Phillip Kim, Esq. (PK 9384)
  Email: pkim@rosenlegal.com
Laurence M. Rosen, Esq.  (LR 5733)
  Email: lrosen@rosenlegal.com
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827



RECEIVED
APR 0 1 2011
U.S.D.C. S.D. N.Y.
COMPLETED

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES QUAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) |
| | ) CIVIL ACTION NO. |
| Plaintiff, | ) ) |
| | ) |
| vs. | ) CLASS ACTION COMPLAINT |
| | ) |
| ADVANCED BATTERY TECHNOLOGIES, INC., ZHIGUO FU, GUOHUA WAN, AND DAN CHANG, | ) ) ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendants. | ) ) ) |

Plaintiff James Quan, individually and on behalf of all other persons similarly situated, by his

undersigned attorneys, for his complaint against defendants, alleges the following based upon

personal knowledge as to himself and his own acts, and information and belief as to all other

matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which

included, among other things, a review of the defendants' public documents, conference calls and

announcements made by defendants, United States Securities and Exchange Commission ("SEC")

1

filings, wire and press releases published by and regarding Advanced Battery Technologies, Inc., ("ABAT," or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased the common stock of ABAT between March 16, 2009, and March 29, 2011, inclusive, seeking to recover damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.  Moreover, during the class period ABAT common stock was traded on NASDAQ, which is located in the Southern District of New York.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

2

including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6.      Named plaintiff James Quan, as set forth in his certification previously filed with the Court, which is incorporated by reference herein, purchased ABAT securities at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant ABAT, which is a Delaware Corporation, is a holding company with an office in New York, which has four employees. ABAT has one direct subsidiary, Cashtech Investment Limited ("Cashtech"), a British Virgin Islands corporation, which is a holding company with two subsidiaries. Cashtech's two subsidiaries are organized under the laws of the People's Republic of China ("PRC"): Harbin ZhongQiang Power-Tech Co., Ltd. ("Harbin ZQPT") and Wuxi ZhongQiang Autocycle Co., Ltd ("Wuxi ZQ").

8.      Zhiguo Fu ("Fu") at all relevant times herein was the Company's CEO and Chairman.

9.      Wan Guohua ("Wan") at all relevant times herein was the Company's CFO.

10.     Fu and Wan are collectively referred to hereinafter as the "Individual Defendants."

11.     Each of the Individual Defendants:

    (a)     directly participated in the management of the Company;

    (b)     was directly involved in the day-to-day operations of the Company at the highest levels;

    (c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

(f)     approved or ratified these statements in violation of the federal securities laws.

12.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein is the result of collective actions of the narrowly defined group of defendants identified above. Each of the above officers and directors of ABAT, by virtue of his or her position with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels, and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

13.     As officers, directors and controlling persons of a publicly-held company whose common stock is and was registered with the SEC pursuant to the Exchange Act, and was traded on the NASDAQ and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect

to the Company's financial condition and to correct any previously-issued statements that had become materially misleading or untrue to allow the market price of the Company's publicly-traded stock to reflect truthful and accurate information.

14.    ABAT is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

15.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to ABAT under *respondeat superior* and agency principles.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

16.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of ABAT during the Class Period and who were damaged thereby.  Excluded from the Class are defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

17.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, ABAT's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by ABAT or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

18.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

19.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

20.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)  whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)  whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of ABAT; and

(c)  to what extent the members of the Class have sustained damages and the proper measure of damages.

21.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### SUBSTANTIVE ALLEGATIONS

22.     During the Class Period, ABAT issued materially false and misleading statements and omitted to state material facts that rendered their affirmative statements misleading as they related to

6

the Company's financial performance, business prospects, and financial condition. As a result of these materially false and misleading statements, the price of the Company's securities was artificially inflated during the Class Period. As the truth of the Company's materially false and misleading statements entered the market, the Company's stock plummeted.

23.     The Class Period begins on March 16, 2009, when the Company filed its annual report for the period ended December 31, 2008 on Form 10-K with the SEC ("2008 10-K"). The 2008 10-K was signed by defendants Fu and Wan, and, pursuant to Sarbanes-Oxley Act of 2002 ("SOX"), was separately certified by defendants Fu and Wan.

24.     The 2008 10-K made the false and misleading statement that ABAT's wholly-owned subsidiary Cashtech owned 100% of a key subsidiary Heilongjiang ZhongQiang Power-Tech Co., Ltd. ("HLJ ZQPT").

25.     The quarterly report for the period ended June 30, 2009 on Form 10-Q filed with the SEC ("2Q08 10-Q") made the same false statement as alleged in paragraph 24. The 2Q08 10-Q was signed by defendants Fu and Wan, and, pursuant to SOX, was separately certified by defendants Fu and Wan.

26.     In fact, at least as of March 30, 2010, Fu owned HLJ ZQPT, as reported in the annual report for the period ended December 31, 2009 on Form 10-K with the SEC ("2009 10-K").

27.     The 2009 10-K was signed by defendants Fu and Wan, and, pursuant to SOX, was separately certified by defendants Fu and Wan.

28.     Thus, either the statement that ABAT owned 100% of HLJ ZQPT was false at the time it was stated in the 2008 10-K and repeated in the 2Q08 10-Q, or the 2009 10-K failed to disclose the related-party transaction between Fu and ABAT (through Cashtech).

7

29.     The 2009 10-K falsely stated: "In December 2008 Advanced Battery Technologies purchased a 49% equity interest in Beyond E-Tech, Inc., a corporation located in Texas that distributes cellular telephones manufactured in China to its order by Flying Technology Development Co. and Lenovo China. The purchase price for the shares was $1.5 million cash. The purchase agreement provided that as long as Advanced Battery Technologies remains a shareholder of Beyond E-Tech, all phones sold by Beyond E-Tech would be powered by ZQ Power-Tech batteries. Although Beyond E-Tech has only recently begun operations, Advanced Battery Technologies' management considers the investment a reasonable means of securing a dedicated customer and a potential for ancillary profits."

30.     The annual report for the period ended December 31, 2010 on Form 10-K filed with the SEC ("2010 10-K") made substantially the same false and misleading statement as alleged in paragraph 29. The 2010 10-K was signed by defendants Fu and Wan, and, pursuant to Sarbanes-Oxley Act of 2002 ("SOX"), was separately certified by defendants Fu and Wan.

31.     The statement that ABAT purchased a 49% equity interest in Beyond E-Tech was false and misleading because Beyond E-Tech is not a real company.

32.     The 2010 10-K stated about ABAT's wholly owned subsidiary Harbin ZQPT (through Cashtech): "In January 2011 Harbin ZQPT acquired the assets of Shenzhen Zhongqiang New Energy Science & Technology Co., Ltd. ("Shenzhen Zhongqiang"). ... The purchase price paid by Harbin ZQPT for the Shenzhen Zhongqiang liabilities was $20 million..."

33.     The 2010 10-K failed to disclose the related-party nature of the transaction in Harbin ZQPT's acquisition of Shenzhen Zhongqiang. Indeed, Fu was previously Executive Managing Director and Legal Representative of Shenzhen Zhongqiang.

8

34.     The 2010 10-K made the following false and misleading statements:

• In May 2010 Wuxi ZQ signed an agreement with All-Power America to serve as the first U.S.-based distributor for Wuxi ZQ since the May 2009 acquisition.
• In September 2010 Menzaghi Motors of Italy placed an order for the aluminum magnesium alloy electric scooters that Wuxi ZQ recently developed to meet demand for a lighter-weight vehicle with higher mileage
• In October 2010 we signed an agreement with Kanuni Motorcycle, a well-known motorcycle producer in Turkey, under which Kanuni now sells three types of Wuxi ZQ scooters.
In addition to the distributors noted above, Wuxi ZQ's roster of distributors now includes
• Hi Motors and Ampere Vehicles Pte. Ltd. in India;
• Eco Style Di in Italy;
• DMS Motorlu Araclarsanayi Vetica in Turkey;
• Tinterparts Trading GmbH in Germany;
• Ersico Spol SRO in the Czech Republic;
• D.M.C. (DuurzaawMobiliteits) in the Netherlands;
• Floretti Europe BVBA in Belgium; and
• Autoplaza Holdings in the Philippines.

35.     The statement made in the 2010 10-K that is alleged in paragraph 34 is false and misleading because an analyst report by Variant View Research ("VVR") published on March 30, 2011 ("VVR Report") stated that VVR interviewed All-Power America and Kanuni Motorcycle, both of which denied selling or agreeing to sell ABAT's products.

36.     The statement made in the 2010 10-K that is alleged in paragraph 34 is also false and misleading because the VVR Report stated that internet searches VVR conducted did not yield any results outside of ABAT's own filings for each of DMS Motorlu Araclarsanayi Vetica, Autoplaza Holdings in the Philippines, or Tinterparts Trading GmbH in Germany.

## TRUTH BEGINS TO EMERGE

37.     The relevant truth began to enter the market on March 30, 2011, the day that the VVR Report was published, and its contents were assimilated by the market.

9

38.    The VVR Report stated that the 2009 10-K failed to explain how Fu became the owner of HLJ ZQPT and failed to disclose the related-party transaction as to his acquisition of HLJ ZQPT. The VVR Report stated that if the Company is not liable for failing to disclose a related-party transaction, then "[i]f the filings are inaccurate, then the company is guilty of misrepresenting itself as previously owning 100% of HLJ ZQPT, when in fact it did not…"

39.    The VVR Report stated: "From Shenzhen ZQ's government registration, we learn that Fu Zhiguo was previously Executive Managing Director and Legal Representative of Shenzhen ZQ…. Yet in ABAT's announcement of the acquisition, and its 10-K, the company does not mention this relationship at all."

40.    The VVR Report stated:

A search of Beyond E-Tech shows that BET-branded phones exist, but as the 10-K reveals, these are simply white label devices purchased from ODMs. It looks like BET sent some samples to review websites to get reviewed, but besides that, there is virtually zero mentioned about the company online, and I cannot find any reputable merchants selling their product. Does this business still exist? Was it ever a "real" company?
….
To dig deeper, I looked up Beyond E-Tech, Inc. on the State of Texas Comptroller's website.
….
We see that the entity was created only two months prior to ABAT's equity purchase, with the registered agent listed as: Lisheng Zhang, 3005 West Loop South Suite 100, Houston, TX 77027.

It turns out that 3005 West Loop South Suite 100 is actually the retail address of "Impression Bridal".
….
Just to be sure, I called Impression Bridal and the friendly clerk informed me there was no Lisheng Zhang associated with that location.

A registered agent is a designated person who must be available during all business hours to receive service of process, otherwise, the company can automatically lose its corporate status and protection. This is important enough that every legitimate corporation is going to have legitimate registered agent information. (One can pay an "agent service" $70/yr to handle this).

10

41.    The VVR Report stated:

All-Power's website does not even mention electric scooters or bicycles.

I spoke with an employee of All-Power America who has access to a list of APA's suppliers. This person told me that although one of APA's subsidiaries sells electric scooters, Wuxi ZQ is not one of that subsidiary's suppliers. The person I spoke with had never even heard of Wuxi ZhongQiang Autocycle Co.

I also questioned a manager at Kuralkan, the sole manufacturer, distributor and exporter of Kanuni motorcycles since 1995, which Wuxi claims a relationship with. This manager stated, "We do not know this company [Wuxi ZQ]." He also confirmed to me that Kuralkan is the only manufacturer of Kanuni motorcycles. ("Kanuni" is the name of the Kuralkan boss's son).

Another purported distributor, "Eco Style Di in Italy" has a nonsensical name, as the word di is Italian for of. I tried looking up "Eco Style" instead, and that company does not appear to have any business related to distributing scooters or bicycles.

Other purported Wuxi distributors seem to not exist at all. A Google search for the following names did not have any search results besides ABAT filings:

DMS "Motorlu Araclarsanayi Vetica"
"Autoplaza Holdings"
"tinterparts trading"

42.    At market open on March 30, 2011, the share price of ABAT was $3.40.

43.    After market close on March 30, 2011, the share price declined to $2.01.

**Applicability of Presumption of Reliance:**
**Fraud-on-the-Market Doctrine**

44.    At all relevant times, the market for ABAT's common stock was an efficient market for the following reasons, among others:

(a)    ABAT's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

11

(b)      During the class period, on average, over several hundreds of thousands of shares of ABAT stock were traded on a weekly basis, demonstrating a very active and broad market for ABAT stock and permitting a very strong presumption of an efficient market;

(c)      As a regulated issuer, ABAT filed periodic public reports with the SEC;

(d)      ABAT regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)      ABAT was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(f)      Numerous NASD member firms were active market-makers in ABAT stock at all times during the Class Period;  and

(g)      Unexpected material news about ABAT was rapidly reflected and incorporated into the Company's stock price during the Class Period.

45.      As a result of the foregoing, the market for ABAT's common stock promptly digested current information regarding ABAT from all publicly available sources and reflected such information in ABAT's stock price. Under these circumstances, all purchasers of ABAT's common stock during the Class Period suffered similar injury through their purchase of ABAT's common stock at artificially inflated prices, and a presumption of reliance applies.

**NO SAFE HARBOR**

46.     The statutory safe harbor provided for certain forward-looking statements does not apply to any of the false statements alleged in this Complaint.  None of the statements alleged herein are "forward-looking" statements and no such statement was identified as a "forward-looking statement" when made.  Rather, the statements alleged herein to be false and misleading all relate to facts and conditions existing at the time the statements were made.  Moreover, cautionary statements, if any, did not identify important factors that could cause actual results to differ materially from those in any forward-looking statements.

47.     In the alternative, to the extent that the statutory safe harbor does apply to any statement pleaded herein which is deemed to be forward-looking, the Individual Defendants are liable for such false forward-looking statements because at the time each such statement was made, the speaker actually knew and/or recklessly disregarded the fact that such forward-looking statements were materially false or misleading and/or omitted facts necessary to make statements previously made not materially false and misleading, and/or that each such statement was authorized and/or approved by a director and/or executive officer of ABAT who actually knew or recklessly disregarded the fact that each such statement was false and/or misleading when made. None of the historic or present tense statements made by the Individual Defendants was an assumption underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such an assumption underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the Individual Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

**FIRST CLAIM**
**Violation of Section 10(b) Of**

13

**The Exchange Act Against and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

48.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (2) cause plaintiff and other members of the Class to purchase ABAT's common stock at artificially inflated prices.    In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

50.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for ABAT's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.    All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

51.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of ABAT as specified herein.

52.    These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course

14

of conduct as alleged herein in an effort to assure investors of ABAT's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about ABAT and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of ABAT's common stock during the Class Period.

      53.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company=s financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

      54.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and

effect of concealing ABAT's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

55.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of ABAT's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of ABAT's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired ABAT common stock during the Class Period at artificially high prices and were or will be damaged thereby.

56.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding ABAT's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their ABAT common stock, or, if they had acquired such common

stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

57.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

58.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

59.    This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM

### Violation of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

60.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.    The Individual Defendants acted as controlling persons of ABAT within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other

17

statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

62.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, ABAT and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

64.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

65.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

WHEREFORE, plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)  Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)  Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 1, 2011                                   Respectfully submitted,

                                                       THE ROSEN LAW FIRM, P.A.


                                                       Timothy W. Brown, Esq. (TB 1008)
                                                           Email: tbrown@rosenlegal.com
                                                       Phillip Kim, Esq. (PK 9384)
                                                           Email: pkim@rosenlegal.com
                                                       Laurence Rosen, Esq. (LR 5733)
                                                           Email: lrosen@rosenlegal.com
                                                       275 Madison Avenue, 34th Floor
                                                       New York, NY  10016
                                                       Phone: (212) 686-1060
                                                       Fax: (212) 202-3827

                                                       Counsel for Plaintiff

19

**Rosen, Laurence**

| | |
|---|---|
| **From:** | postmaster@rosenlegal.com |
| **Sent:** | Thursday, March 31, 2011 12:38 PM |
| **To:** | lr54321@gmail.com |
| **Subject:** | Confirmation of Receipt of Certification |

Dear James Quan,

We have received your certification in the Advanced Battery Technologies,Inc. class action litigation. Thank you for submitting your information. Below is a copy of your certification - please retain it for your records. If you have any questions, please feel free to contact us at 1-866-rosenlegal (866-767-3653) or via e-mail at info@rosenlegal.com.

With increasing frequency, we find that our new clients were victimized by more than one company. If you think you may have lost monies in the market due to the dishonest acts or statements of a different company and would like it to be investigated, free of charge, please email us at reportfraud@rosenlegal.com.

Sincerely,

The Rosen Law Firm P.A.

--------

CERTIFICATION

Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Advanced Battery Technologies,Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Advanced Battery Technologies,Inc. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

First name: James

Last name: Quan

Address: ███████████

City: ████

State, Zip: ██████████          REDACTED

Email: ████████████

Phone: ██████████

The Plaintiff Certifies that:

1

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Shares Purchased:

Purchase Date(s): 2/22/2011
Number of shares: 2000
Price per Share: 3.80

Shares Sold:

Sale Date(s): 3/31/2011
Number of shares: 2000
Price per Share: 1.91

7. During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except if detailed below:

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate: yes

By clicking on the button below, I intend to sign and execute this agreement: yes

Clicked to Submit Certification in the Advanced Battery Technologies,Inc. Action

Signed pursuant to California Civil Code Section 1633.1, et seq. - Uniform Electronic Transactions Act

-------------

Signed pursuant to California Civil Code Section 1633.1, et seq. - Uniform Electronic Transactions Act

--------------

Confidential Information

The information in this e-mail message is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (866-767-3653) and return the original message to the above e-mail address. Thank you.