UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____X

JAMES QUAN, Individually and on Behalf of
All Others Similarly Situated,

               Plaintiff,

v.

ADVANCED BATTERY TECHNOLOGIES, INC.,
ZHIGUO FU, GUOHUA WAN, and DAN CHANG,

               Defendants.

_____X

JAMES M. BURNS, Individually and on Behalf of
All Others Similarly Situated,

               Plaintiff,

v.

ADVANCED BATTERY TECHNOLOGIES, INC.,
ZHIGUO FU, and GUOHUA WAN,

               Defendants.

_____X

ARNOLD COHEN, Individually and on Behalf of
All Others Similarly Situated,

               Plaintiff,

v.

ADVANCED BATTERY TECHNOLOGIES, INC.,
ZHIGUO FU, and GUOHUA WAN,

               Defendants.

_____X

[ADDITIONAL CAPTION ON NEXT PAGE]

No. 11 Civ. 2279 (CM)

No. 11 Civ. 2354 (CM)

No. 11 Civ. 2849 (CM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/9/11

                                                                X

GEOFF CONNORS, Individually and on Behalf of
All Others Similarly Situated,

                  Plaintiff,

        v.                                      No. 11 Civ. 3098 (CM)

ADVANCED BATTERY TECHNOLOGIES, INC.,
ZHIGUO FU, and GUOHUA WAN,

                  Defendants.

                                             X

BRISTOL INVESTMENT FUND, LTD., and
GREGORY BONIN, Individually and On Behalf of
All Others Similarly Situated,

                  Plaintiff,

        v.                                      No. 11 Civ. 3729 (CM)

ADVANCED BATTERY TECHNOLOGIES, INC.,
ZHIGUO FU, and GUOHUA WAN,

                  Defendants.

                                             X

## MEMORANDUM AND ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING RUBLE SANDERSON AS LEAD PLAINTIFF, AND APPROVING LEAD PLAINTIFF'S SELECTION OF COUNSEL

McMahon, J.

## I.     INTRODUCTION

### A.    **Factual Background**

The five above-captioned related actions were initiated against defendants Advanced

Battery Technologies, Inc., Zhiguo Fu, Guohua Wan, and Dan Chang[1] (hereinafter "ABAT")

alleging violations of sections 10(b) and 20(a) of the Securities and Exchange Act of 1934.

(Quan Compl. at 2, ¶2.)  In essence, the actions allege that ABAT made false and misleading

---

[1] Dan Chang was named as a defendant only in James Quan v. Advanced Battery Technologies, Inc., et al., No. 11 Civ. 2279 (CM).

2

statements about the ownership of its subsidiaries, the related-party nature of transactions entered into by ABAT, sales made by ABAT, and ABAT's financial performance, business prospects, and financial condition, generally. (Quan Compl. at 6-9, ¶¶22-36.) As a result of these alleged statements, ABAT's stock was artificially inflated. (Quan Compl. at 6-7, ¶22.) On March 30, 2011, an analyst report was published by Variant View Research, highlighting those items that Variant View Research believed had been misrepresented by ABAT (the "corrective disclosure"). (Quan Compl. at 9-11, ¶¶37-41.) The corrective disclosure caused the stock of ABAT to plummet from a value of $3.40 per share at market open on March 30, 2011 to $2.01 per share at market close on March 30, 2011. (Quan Compl. at 11, ¶¶42-43.)

## B.     Motion History

To date, seven motions have been filed for consolidation, appointment of lead plaintiff, and approval of lead plaintiff's selection of counsel by: John R. Overton ("Overton") (ECF Dkt. No. 10), Gary Bleiweiss ("Bleiweiss") (ECF Dkt. No. 7), Brian and Cheri Larkowski (the "Larkowskis") (ECF Dkt. No. 13), Federico Schmid ("Schmid") (ECF Dkt. No. 18), Bristol Investment Fund, Ltd. ("Bristol") (ECF Dkt. No. 39), Ruble Sanderson ("Sanderson") (ECF Dkt. No. 16), and Jerry Pehlke, Jr. ("Pehlke") (ECF Dkt. No. 29). However, Overton, Bleiweiss, the Larkowskis, Schmid, and Bristol have all either withdrawn their motions or subsequently filed Notices of Non-Opposition. (ECF Dkt. Nos. 37, 36, 35, 38, and 48, respectively.) Therefore, the only two competing motions which remain are those of Sanderson and Pehlke.

For the reasons set forth below, Sanderson's motion for appointment of lead plaintiff and approval of lead plaintiff's selection of counsel is GRANTED and Pehlke's identical motion is DENIED. The motions of both parties for consolidation of the related cases is GRANTED.

## II.  DISCUSSION

### A.  All Movants Have Agreed That the Related Cases Should Be Consolidated, and the Court Finds that Consolidation is Appropriate

Consolidation of cases is appropriate where, as here, "If actions before the court involve a common question of law or fact." Fed. R. Civ. P. 42(a). All of the cases "involve securities claims brought on behalf of purchasers of [ABAT] securities during the Class Period. The cases assert similar claims based on the same legal theories and the same underlying facts. No opposition to consolidation has been filed." See Vale v. McGuinn, No. 09 Civ. 3807, 2009 WL 3297490, at *3 (S.D.N.Y. Oct. 13, 2009) (citing Corwin v. Seizinger, Nos. 07 Civ. 6728, 07 Civ. 7016, 07 Civ. 7476, 2008 WL 123846 (S.D.N.Y. Jan. 8, 2008)). Accordingly, the motions for consolidation are granted.

### B.  Sanderson is the "Most Adequate Plaintiff" to Serve as Lead Plaintiff

Under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), a rebuttable presumption exists that a moving plaintiff who has the "largest financial interest in the relief sought by the class" is the "most adequate" to serve as lead plaintiff. From the evidence presented to the Court, it is clear that Sanderson held the largest amount of retained shares at the end of the class period and therefore suffered the largest loss as compared with all movants.

Pehlke argues that since Sanderson sold a large percentage of stock inside the Class Period, Sanderson should be precluded from serving as lead plaintiff since he is subject to a unique defense of loss causation. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). Pehlke arrives at this conclusion by closing the class period on March 30, 2011, instead of March 29, 2011, the day prior to the corrective disclosure. Sanderson purchased a total of 679,467 shares of ABAT during the Class Period. (Mem. In Further Support of Ruble Sanderson's Motion, Ex. A ("Ex.

4

A") at 2.)  Sanderson sold 419,467 of those shares prior to 3/30/2011, and 130,000 of those

shares on 3/30/2011.  (Ex. A at 1-2.)  Sanderson contends that at the close of the Class Period, he

retained 260,000 shares (calculated by subtracting the 419,467 shares sold prior to 3/30/2011

from his total purchased shares).  (Ex. A at 2.)  Pehlke argues, however, that Sanderson's sales

on 3/30/2011 occurred within the class period, making his intra-Class Period sales total 549,467

shares, and reducing his retained share count to 130,000.  (Mem. In Further Support of Pehlke's

Motion at 7.)

Pehlke's argument is unavailing.  Even if this Court were to credit Pehlke's argument that

Sanderson's March 30, 2011 sales should be counted as intra-Class Period sales[2], Sanderson

would still have 130,000 retained shares as compared with Pehlke's 60,000 retained shares at the

close of the Class Period.  Pehlke's reliance on In re Veeco Instruments, Inc. Securities

Litigation, 233 F.R.D. 330 (S.D.N.Y. 2005), to discredit Sanderson's position is misplaced.  This

Court in Veeco, relying on Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005),

questioned whether a party moving for appointment as lead plaintiff could prove loss causation

when all the party's shares were sold prior to the corrective disclosure at issue.  That situation is

simply not applicable here.  Sanderson retained more than double the number of shares as Pehlke

at the close of the Class Period; the fact that he made a certain number of sales during the Class

Period can not and does not alter the fact that he suffered the greatest amount of loss following

the Class Period close.

---

[2] The Court notes that Sanderson's March 30, 2011 sales occurred at the severely deflated stock
prices alleged to have occurred following the March 30, 2011 corrective disclosure, making
Pehlke's argument that the March 30, 2011 sales occurred outside the Class Period highly
implausible.

5

Sanderson therefore has met the requirements of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(bb), and all that remains is to determine whether he "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

**C.    Sanderson Satisfies the Requirements of Federal Rule of Civil Procedure 23**

Federal Rule of Civil Procedure 23(a) establishes four requirements that must be met before a class action can proceed: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. However, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." In re Oxford Health Plans, Inc. Securities Litigation, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997). There is no dispute that Sanderson alleges that he suffered losses as a result of ABAT's false and misleading statements during the same period as the other movants, plaintiffs, and potential class members, and that he is alleging violations of the same provisions of the Securities and Exchange Act of 1934, against the same defendants as the other parties. Sanderson therefore satisfies the typicality requirement.

Adequacy of representation requires that "representatives will fairly and adequately protect the interests of the class." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613 (1997). The adequacy inquiry looks to potential for conflicts in the class. Id. at 611. Here, there is no indication that Sanderson's appointment as lead plaintiff will lead to any intra-class conflict.

6

Sanderson has a significant financial stake in the outcome of this litigation, and his claims are typical of other class members. These factors ensure that Sanderson will adequately and fairly represent the interests of all other class members.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) states that the presumption of most adequate plaintiff can only be rebutted upon proof that a party "will not fairly and adequately protect the interests of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." As discussed above, no such proof has been offered here. Accordingly, Sanderson is the appropriate party to appoint as lead plaintiff.

## C.    Sanderson's Selection of Lead Counsel is Approved

15 U.S.C. § 78u-4(a)(3)(B)(v) allows a lead plaintiff to select and retain counsel to represent a class, subject to the approval of the Court. Sanderson, as lead plaintiff, is represented by Pomerantz Haudek Grossman & Gross, LLP, and has selected that firm as lead counsel. That firm has attached an extensive resume showing that it is qualified and able to serve as lead counsel in this action, and no evidence has been offered to the contrary. Accordingly, Sanderson's selection of lead counsel is approved.

## III.    <u>CONCLUSION</u>

For all the above reasons, Sanderson's motion for appointment of lead plaintiff and approval of lead plaintiff's selection of counsel is GRANTED and Pehlke's identical motion is DENIED.  The motions of all parties for consolidation of the related cases is GRANTED.

IT IS HEREBY ORDERED THAT:

(1)    The above-captioned actions are hereby consolidated for all purposes into one action.

(a)    These actions shall be referred to herein as the "Consolidated Actions."  This Order shall apply to the Consolidated Actions and to each case that is subsequently filed in this Court that relates to the same subject matter as in the Consolidated Actions.

(b)    Every pleading in this Consolidated Action shall bear the following Caption:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| _____X | No._____ |
| In re ADVANCED BATTERY TECHNOLOGIES, INC. SECURITIES LITIGATION | <u>CLASS ACTION</u> |
| _____ | |
| THIS DOCUMENT RELATES TO: | [TITLE OF DOCUMENT] |
| _____X | |

When the document being filed pertains to all actions, the phrase "All Actions" shall appear immediately after the phrase "This Document Relates To:."  When the document applies to some, but not all, of the actions, the document shall list, immediately after the phrase "This Document Relates To:", the docket number for each individual action to which the document applies, along with the name of the first-listed plaintiff in that action.

(c)     This Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case which might not properly be consolidated as part of this Consolidated Action.

(2)     A Master Docket and Master File shall be established for the Consolidated Actions.  The Master File shall be No. 11 Civ. 2279 (CM).  All orders, pleadings, motions, and other documents shall, when filed and docketed in the Master File, be deemed filed and docketed in each individual case to the extent applicable.  When an order, pleading, motion, or document is filed with a caption indicating that it is applicable to fewer than all of these Consolidated Actions, the Clerk shall file such pleadings in the Master File and note such filing in the Master Docket and in the docket of each action referenced.

(3)     When a case that arises out of the subject matter of this action is hereinafter filed in or transferred to this Court, the Clerk of this Court shall:

(a)     file a copy of this Order in the separate file for such action;

(b)     mail a copy of this Order to the attorneys for the plaintiff(s) in the newly filed or transferred case and to any new defendant(s) in the newly filed or transferred case; and

(c)     make the appropriate entry in the docket for this action.

(4)     Each new case which arises out of the subject matter of this Consolidated Action that is filed in or transferred to this Court shall be consolidated with this action and this Order shall apply thereto, unless a party objecting to this Order or any provision of this Order shall, within ten (10) days after the date upon which a copy of this Order is served on counsel for such party, files an application for relief from this Order or any provision herein and this Court grants such application.

9

(5)     During the pendency of this litigation, or until further order of this Court, the parties shall take reasonable steps to preserve all documents within their possession, custody, or control, including computer-generated and stored information and materials such as computerized data and electronic mail, containing information that is relevant to or which may lead to discovery of information relevant to the subject matter of the pending litigation.

(6)     The Court hereby appoints Ruble Sanderson ("Sanderson") as Lead Plaintiff, for the reasons set forth above.

(7)     The Court hereby approves of Sanderson's selection of Pomerantz Haudek Grossman & Gross, LLP to serve as Lead Counsel in this action, for the reasons set forth above.  Lead Counsel shall have the following responsibilities and duties, to be carried out either personally or through counsel whom Lead Counsel shall designate:

(a)     to coordinate the briefing and argument of motions;

(b)     to coordinate the conduct of discovery proceedings;

(c)     to coordinate the examination of witnesses in depositions;

(d)     to coordinate the selection of counsel to act as a spokesperson at pretrial conferences;

(e)     to call meetings of the plaintiffs' counsel as they deem necessary and appropriate from time to time;

(f)     to coordinate all settlement negotiations with counsel for defendants;

(g)     to coordinate and direct the pretrial discovery proceedings and the preparation for trial and the trial of this matter and to delegate work responsibilities to selected counsel as may be required; and

(h)     to supervise any other matters concerning the prosecution, resolution or settlement of the Action.

(8)     No motion, request for discovery, or other pretrial proceedings shall be initiated or filed by any plaintiff without the approval of Lead Counsel, so as to prevent duplicative pleadings or discovery by plaintiffs.  No settlement negotiations shall be conducted without the approval of Lead Counsel.

(9)     Counsel in any related action that is consolidated with this Action shall be bound by this organization of plaintiffs' counsel.

(10)    Lead Counsel shall have the responsibility of receiving and disseminating Court orders and notices.

(11)    Lead Counsel shall be the contact between plaintiffs' counsel, and shall direct and coordinate the activities of plaintiffs' counsel.

(12)    Defendants shall effect service of papers on plaintiffs by serving a copy of same on Lead Counsel by overnight mail service, electronic or hand delivery.  Plaintiffs shall effect service of papers on defendants by serving a copy of same on defendants' counsel by overnight mail service, electronic or hand delivery.

**SO ORDERED.**

Dated: September 9, 2011

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

11