UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x

IN RE ADVANCED BATTERY                                    Consolidated Civil Action
TECHNOLOGIES, INC.                                        No. 11 Civ. 2279 (CM)
SECURITIES LITIGATION

_____x

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SETTLEMENT APPROVAL AND REIMBURSEMENT OF EXPENSES

Lead Plaintiff Ruble Sanderson, individually and on behalf of all other members of the

Settlement Class ("Lead Plaintiff"), has moved for final approval of the Proposed Settlement and

Reimbursement of Expenses in these consolidated class actions. The settlement terms originally

agreed upon by the parties are set forth in the Stipulation of Settlement, which was preliminarily

approved by this Court by Order dated November 26, 2013, and Amendment No. 1 thereto. (Dkt.

No. 120.) Since preliminary approval, the agreement has been modified in one respect --

Amendment No. 1 to the Stipulation of Settlement delinks this settlement from the settlement of

related derivative litigation, which this court has declined to approve.  The Court will refer to the

terms of the Stipulation of Settlement, as amended by Amendment No. 1, as the "Settlement."

For substantially the reasons advanced by Class Counsel in support of this motion, the

Settlement as modified is approved.

### BACKGROUND

On April 1, 2011 and thereafter, several securities class action complaints were filed in

the United States District Court for the Southern District of New York against the ABAT

Defendants and others. (*See* Dkt. No. 1; *Burns v. Adv. Battery Techs., Inc.*, No. 11 Civ.

2354-CM; *Cohen v. Adv. Battery Techs., Inc.*, No. 11 Civ. 2849-CM (the "*Cohen Action*"); and

*Connors v. Advanced Battery Techs., Inc.*, No. 11 Civ. 3098-CM.) The complaints asserted

claims under Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b), and 78t(a)),

and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission, (17 C.F.R.

§ 240.10b-5), alleging that the ABAT Defendants, among others, made material misstatements

and omissions concerning the Company's financial results, and specifically, that the Company

reported inflated gross profits, net income, and profit margins, and further, misrepresented the

related party nature of certain business transactions. (*See, e.g.*, Dkt. No. 1, ¶¶ 1-2, 22-36; *Cohen*

*Action*, Dkt. No. 1, ¶¶ 1-5, 7, 18-46.) On September 9, 2011, the Court consolidated the related

securities class actions, appointed Mr. Ruble Sanderson as Lead Plaintiff and approved Lead

Plaintiff's choice of Pomerantz LLP as Lead Counsel ("Lead Counsel"). (Dkt. No. 50.)

On September 29, 2011, Lead Plaintiff filed the Corrected First Amended Consolidated

Class Action Complaint ("First Amended Complaint"), naming as defendants the ABAT

Defendants, as well as ABAT's outside auditors, Bagell, Josephs, Levine & Co., LLC and

Friedman LLP (collectively, "Bagell Josephs"), and EFP Rotenberg, LLP ("EFP") (collectively,

the "Auditor Defendants"). (Dkt. No. 52.) By Decision and Order dated August 29, 2012, the

Court denied the ABAT Defendants' motion to dismiss the First Amended Complaint, but

granted the motions to dismiss filed by the Auditor Defendants. (Dkt. No. 90.)

On September 25, 2012, Lead Plaintiff filed a Motion for Leave to File a Second

Amended Consolidated Class Action Complaint (Dkt. Nos. 96, 97), which the Auditor

Defendants opposed. (Dkt Nos. 100 and 101.) On September 18, 2012, Lead Plaintiff filed a

Motion for Class Certification. (Dkt. Nos. 94, 95.)

On October 5, 2012, the ABAT Defendants filed an Answer to the First Amended

Complaint. (Dkt. No. 98.) On October 11, 2012, the Court entered a stay of all proceedings.

(Dkt. No. 99.)

Thereafter, the Settling Parties commenced settlement negotiations. Counsel for Lead Plaintiff and the ABAT Defendants engaged in extensive negotiations concerning the possible resolution of this Litigation. Such negotiations included extensive correspondence, an exchange of information relevant to the Settlement, telephonic negotiations and in-person negotiation sessions. These negotiations included discussions not only about the merits of the claims, but also about the Company's financial condition and assets.

After difficult negotiations, the Settling Parties reached an agreement to settle this lawsuit. In the course of settlement discussions, the ABAT Defendants produced documents reflecting minimal insurance coverage applied to Lead Plaintiff's claims and that their U.S. assets are not significant enough to withstand a multimillion dollar judgment, that the majority of the Company's assets are located in the People's Republic of China ("China") and that recovery of any judgment against them is unlikely.

These settlement negotiations ultimately resulted in a proposed Settlement which was memorialized in a Stipulation of Settlement dated April 24, 2013. The Stipulation of Settlement was conditioned upon, among other things, dismissal of two derivative actions captioned *Blumka v. Fu*, (N.Y. Cty. Index No. 651343/2011) and *Braun v. Fu*, 11 Civ. 4383 (S.D.N.Y.) ("Derivative Actions").

On November 5, 2013, the papers in support of preliminary approval of the Settlement were filed with the Court. (Dkt. Nos. 116, 117.) On November 26, 2013, the Court entered an order preliminarily approving the Settlement, certifying the Settlement Class, certifying Lead Plaintiff as class representative for the Settlement Class, appointing Pomerantz LLP as Lead Counsel for the Settlement Class and providing for notice of the Settlement to all potential Settlement Class members. (Dkt. No. 120.)

Pursuant to the preliminary approval order, notice of the Settlement was sent subsequently to Settlement Class members. *See* Walsh Decl. at Ex. 1, Affidavit of Michael Rosenbaum at ¶¶ 3-4, 9 (the "Rosenbaum Aff.).

On February 21, 2014, this Court held a final settlement hearing with respect to both this Settlement and a settlement in the Derivative Actions. At the hearing, the Court expressed serious reservations concerning the terms of the settlement of the Derivative Actions, and indicated that the Court would not approve that settlement in its current form. Given that approval of the Derivative Actions' settlement was originally a condition of the settlement in the case, the Court requested that the parties advise within fourteen days whether they would be prepared to proceed with the class action settlement. By letter dated March 7, 2014, the parties informed the Court that they were prepared to proceed with this settlement regardless of the status of the Derivative Actions' settlement. The Stipulation of Settlement was subsequently amended by an Amendment No. 1 to the Stipulation of Settlement, dated March 18, 2014, to remove the condition of the dismissal of the Derivative Actions.

## DISCUSSION

## I.    THE SETTLEMENT IS APPROVED.

### A.    The Settlement Is Fair, Adequate and Reasonable.

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. Thus, the procedural and substantive fairness of a settlement should be examined "in light of the 'strong judicial policy in favor of settlement[]' of class action suits." *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825 JLC, 2013 WL 1364147, at *2 (S.D.N.Y. Apr. 2, 2013) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)) (brackets in original); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238(DLC),

2005 WL 1330937, at *6 (S.D.N.Y. Jun. 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."); *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Due to the presumption in favor of settlement, "[a]bsent fraud or collusion, courts should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM), 2007 WL 2230177, at *4 (S.D.N.Y. Jul. 27, 2007). More explicitly, the Supreme Court has cautioned that, in reviewing a proposed settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

As in this case, a settlement of claims brought as a class action is subject to court approval after reasonable notice and a hearing. *See* Fed. R. Civ. P. 23(e)(1)-(2). Courts generally approve a settlement if it is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart*, 396 F.3d at 116 (internal quotation omitted). A court determines the fairness of a settlement by looking both at the terms of the settlement and the preceding negotiation process. *Id.* at 116. With respect to the settlement process, a class action settlement enjoys a strong "presumption of fairness" where it is the product of arm's-length negotiations concluded by experienced, capable counsel after meaningful discovery. *Id.*; *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004).

### B.      The Settlement Satisfies the *Grinnell* Factors.

To determine whether a settlement is fair, reasonable, and adequate, the Court should consider the so-called "*Grinnell* factors:" (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the

defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 48 (2d Cir. 2000). "All nine factors need not be satisfied, rather, the court should consider the totality of these factors in light of the particular circumstances." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)).

Here, the Settlement substantially satisfies the *Grinnell* factors and, thus, wholly warrants final approval.

### 1.   Continued Litigation Would Be Complex, Expensive and Protracted.

The Settlement provides the Settlement Class with fair relief, given the delay and expenses of trial and post-trial proceedings, and the likelihood that any judgment recovered would be uncollectible. Courts consistently recognize that the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement, especially in a securities class action. *See, e.g., In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL Dkt. No. 1500, 02 Civ. 5575(SWK), 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *Hicks v. Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005); *In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (granting approval and noting that complex securities fraud issues "were likely to be litigated aggressively, at substantial expense to all parties").

Regardless of the ultimate outcome, there is no question that further litigation would have been expensive and complex. With respect to discovery generally, given the complexities of the issues involved in this action, thousands of pages of documents would have been reviewed and

numerous depositions taken. Moreover, the ABAT Defendants and key witnesses are located in

China, which would add tremendous complication and cost to pursue discovery. *See In re China*

*Sunergy Sec. Litig.*, No. 07 Civ. 7895(DAB), 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011)

(expense and protracted nature of discovery of Chinese defendants favored settlement); *see also*

*Schwartz v. Novo Industri A/S*, 119 F.R.D. 359, 363 (S.D.N.Y.1988) (weighing the complications

of discovery with a foreign defendant in favor of settlement).

      Class certification would have presented additional complexities and obstacles. Lead

Plaintiff procured expert opinion(s) on the issue of market efficiency; Defendants would have

done the same had the case proceeded. The parties would also have enlisted experts on the issues

of loss causation and damages. In addition to full briefing, documents would have been produced

and expert depositions would have been taken.

      Were plaintiffs to prevail on their motion for class certification, extensive discovery

would have ensued, implicating the significant challenges detailed above concerning obtaining

documents and other discovery from witnesses in China. Following the close of merits

discovery, the parties would engage in expert discovery and trial preparation, which would be

expensive and complex.

      The parties resolved this action prior to the resolution of Lead Plaintiff's class

certification motion, or the filing of any summary judgment and *Daubert* motions, thereby

avoiding contentious motion practice, a complex and costly trial, and likely appeals. At summary

judgment, Lead Plaintiff would have faced numerous hurdles, including Defendants' challenges

to loss causation, and arguments that there were no actionable misrepresentations during the

Class Period. Even if the First Amended Complaint survived Defendants' likely motion(s) for

summary judgment and any ensuing appeals, continued prosecution of the action would be

complex, expensive, and lengthy, with a more favorable outcome than the Settlement highly

uncertain. Moreover, regardless of which party might prevail at trial, appeals likely would ensue.

Indeed, the present value of a certain recovery at this time, compared to the slim chance

for a greater one down the road, supports approval of a settlement that eliminates the expense

and delay of continued litigation, as well as the significant risk that the Class could receive no

recovery. Accordingly, any potential recovery by Class members in the absence of a settlement

would occur years in the future, substantially delaying payment to Class members. By contrast,

the Settlement offers the opportunity to provide definite recompense to the Class now. *See Hicks*,

2005 WL 2757792, at *6 ("Further litigation would necessarily involve further costs; justice may

be best served with a fair settlement today as opposed to an uncertain future settlement or trial of

the action."). Thus, the likely duration, complexity and expense of further litigation supports a

finding that the Settlement is fair and weighs in favor of final approval.

### 2. The Lack of Objections and Minimal Number of Opt-Outs Support Final Approval.

The absence of valid objections and minimal investors electing to opt out of the

Settlement provides evidence of Class members' approval of the terms of the Settlement. *See*

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587, 2003 WL 21136726, at *1

(S.D.N.Y. May 15, 2003). Indeed, "[i]f only a small number of objections are received, that fact

can be viewed as indicative of the adequacy of the settlement." *Wal-Mart*, 396 F.3d at 118

(citations omitted).

Pursuant to the preliminary approval order, and as stated in the Notice of Pendency and

Proposed Settlement of Class Action (the "Long Notice"), Settlement Class members were

originally notified that they have until January 31, 2014 to request exclusion from the Settlement

Class or to object to the Settlement (*i.e.*, 20 days prior to the Court's final approval hearing on

8

February 21, 2014, plus one day to ensure that objections could be filed on a day the Clerk's office was open). Rosenbaum Aff. at ¶ 10. At the parties' request, because of the discovery of additional data, the time for sending notices and for requesting exclusion was extended. Through February 18, some 82,019 post card notices were sent to potential class members, their names and addresses derived from transfer records, Depository Trust's Participant Proxy Contact List, databases maintained by Berdon Claims Administration's listing of compliance personnel for nominees, and the Vickers Directory of Institutional Investors.  No formal objections were filed. The objector to the contemporaneous (and now disapproved) Derivative Settlement, Joel Caplan, commented variously in his numerous communications with the court about this settlement – sometimes complaining about it, other times insisting that he did not oppose it – but in the end, he chose to opt out of the settlement, as did 13 other shareholders. Rosenbaum Aff. at ¶ 10. By contrast, 1,640 completed claims forms have been received. This attests to the overwhelming support for the settlement among class members.

### 3. Lead Plaintiff Has Sufficient Information to Make Informed Decisions as to Settling This Case.

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-mart*, 396 F.3d at 117, focuses on whether the plaintiffs "obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207 (JGK), 2010 WL 3119374, at *3 (S.D.N.Y. Aug. 6, 2010) (citations omitted).

The substance of Lead Counsel's knowledge of the merits and potential weaknesses of Plaintiff's claims are adequate to support the Settlement in this case. By the time the parties agreed to settle this action, Lead Counsel had, among other things:

- reviewed and analyzed ABAT's Class Period and pre-Class Period public filings, annual reports, press releases, quarterly earnings call and investment conference transcripts, and other public statements;

- collected and reviewed a comprehensive compilation of analyst reports and major financial news service reports on ABAT;

- reviewed and analyzed stock trading data relating to ABAT;

- utilized the services of a private investigator in China, who located and interviewed ABAT customers and former employees, visited certain ABAT production facilities in China and obtained ABAT's Chinese regulatory filings;

- researched, investigated, and drafted one of the initial complaints (*Cohen Action*, Dkt. No. 1) and the First Amended Complaint (Dkt. No. 52);

- researched and drafted the motion to appoint the Lead Plaintiff (Dkt. Nos. 16, 17, 40);

- researched and drafted memoranda opposing Defendants' Motions to Dismiss (Dkt. No. 79);

- researched and drafted Lead Plaintiff's motion to strike documents offered by the ABAT Defendants (Dkt. Nos. 80, 81, 88); and

- researched and drafted Lead Plaintiff's motion for class certification (Dkt. Nos. 94, 95) and supporting memoranda of law thereto.

While no merits discovery occurred in this case to date, Lead Counsel conducted targeted post-Settlement discovery with respect to ABAT's recoverable assets. Thus, Lead Counsel is knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend the Settlement. *See Global Crossing*, 225 F.R.D. at 458 ("[T]he question is whether the parties had adequate information about their claims....").

### 4. Lead Plaintiff Faces Significant Risks in Establishing Liability and Damages.

In analyzing the risks of establishing liability, a court does not "need to decide the merits of the case or resolve unsettled legal questions." *Cinelli v. MCS Claim Servs., Inc.*, 236 F.R.D. 118, 121 (E.D.N.Y. 2006) (internal quotations and alterations omitted). Rather, courts should weigh the likelihood of success on the merits against the relief provided by the Settlement. *Id.* at 122. Courts routinely approve settlements where plaintiffs would have faced significant legal and factual obstacles to establishing liability. *See Global Crossing*, 225 F.R.D. at 459.

In assessing the Settlement here, the Court balances the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463. Securities class actions present hurdles to proving liability that are particularly difficult for plaintiffs to meet. *See AOL Time Warner*, 2006 WL 903236, at *11 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *Alloy*, 2004 WL 2750089, at *2 (finding that issues present in a securities action presented significant hurdles to proving liability).

While Lead Counsel believes, based on their investigation, that Lead Plaintiff's claims against the ABAT Defendants have merit, they also recognize that they would face substantial hurdles. Defendants have articulated arguably credible defenses that could be accepted by the Court or jury. Indeed, proving liability and establishing damages is far from a foregone conclusion. *See In re Milken and Assocs. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement of a small percentage of the total damages sought because the magnitude of damages often becomes a "battle of experts…with no guarantee of the outcome"); *see also In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) (same), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

The ABAT Defendants argued in their motion to dismiss that Lead Plaintiff failed to establish the type of conscious misbehavior and recklessness implicating scienter. Specifically, the ABAT Defendants submitted documentary evidence to support their argument that one of the transactions challenged in the complaint as an undisclosed related party deal was not, in fact, related. (*See* Dkt. Nos. 70-24 and 70-25.) The Court refused to consider these documents when deciding the ABAT Defendants' motion to dismiss; however, it is far from clear that Lead Plaintiff would have prevailed on this issue at trial.

More importantly, the Settlement acknowledges the practical reality that collectability of any judgment against the ABAT Defendants is unlikely. In particular, documents produced by the ABAT Defendants indicate that they have minimal insurance coverage applying to Lead Plaintiff's claims, and that, in all likelihood, any judgment against the ABAT Defendants would be uncollectible because a majority of their assets are outside of the United States. Lead Counsel relied on this information provided by the ABAT Defendants in recommending the reasonableness of the Settlement – which affords some recovery to class members, versus no recovery at all even if this case were successfully litigated to judgment.

Given the uncertain prospects for ***any*** recovery in this action, settlement at this point in the litigation provides a tangible benefit to the Class. Absent this Settlement, the Class faces a very real risk of no recovery, possibly after years of additional proceedings. The Settlement, however, will provide certain relief to the Class now, and "without subjecting them to the risks, complexity, duration, and expense of continuing litigation." *Global Crossing*, 225 F.R.D. at 456-57; *see also Maley* v. *Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).

### 5. Maintaining Class Action Status through Trial Presents a Substantial Risk.

While Lead Counsel believes in the merits of the case, Defendants surely would have raised vigorous challenges to class certification. Moreover, even if the Class were certified, Defendants may have moved to decertify the Class before trial or on appeal at the conclusion of trial, as class certification may always be reviewed. Indeed, Federal Rule of Civil Procedure 23(c) authorizes a court to decertify a class at any time. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."); *Eggleston* v. *Chicago Journeymen Plumbers' Local Union No. 130, UA.*, 657 F.2d 890, 896 (7th Cir. 1981) ("[A] favorable class determination by the court is not cast in stone...."). Given such risk, this factor weighs in favor of approval of the Settlement.

### 6. The Risk that Any Judgment against the ABAT Defendants Would Be Uncollectible Is Significant.

Even if Lead Plaintiff prevailed at trial and obtained judgment against the ABAT Defendants, based on the post-Settlement discovery and representations made by the ABAT Defendants, it is questionable whether Lead Plaintiff would ever be able to collect on that judgment. This factor weighs heavily in support of approval. *See Aramburu v. Healthcare Fin. Services, Inc.*, No. 02-CV-6535MDG, 2009 WL 1086938, at *4 (E.D.N.Y. Apr. 22, 2009) (approval favored where "defendant's 'dire financial condition,' [made] 'obtaining a greater recovery than provided by the [s]ettlement ... difficult"); *see also Maley*, 186 F. Supp. 2d at 365 (considering contribution of insurance policies to be minimal because the policies would be significantly depleted by defense costs or possibility of carrier disclaiming coverage).

In light of documents produced by the ABAT Defendants reflecting that they have minimal insurance coverage and no significant collectible assets in the United States, Lead Counsel negotiated a fair and reasonable Settlement for the Settlement Class. In particular, Lead

Counsel reviewed: (1) the ABAT Defendants' insurance documents, which indicate that the amount of coverage is extremely limited; and (2) documents provided by the ABAT Defendants reflecting that their assets in the United States are of limited value.

This fundamental collectability issue could easily result in no recovery at all. Thus, this factor weighs heavily in favor of approving the Settlement.

### 7. The Settlement Is Reasonable in Light of the Best Possible Recovery.

The Settlement is reasonable in light of the Settlement Class' best possible recovery against the ABAT Defendants, which is severely limited by the minimal assets that would be available to pay any judgment that may be won. "The 'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint *as well as the ability of Defendants to pay the judgment*." *Maley*, 186 F. Supp. 2d at 365 (finding that the settlement provided maximum available cash in light of the "limited insurance coverage and poor cash position of the Company") (emphasis added).

The settlement amount is sufficient when limited insurance coverage, minimal domestic assets, and significant risk of being unable to collect any judgment against the ABAT Defendants are taken into account. *See, e.g., Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (internal quotations and citations omitted); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 618 (N.D. Cal. 1979) ("[S]imply because a settlement may amount to only a fraction of the potential recovery does not in itself render it unfair or inadequate. Compromise is the very nature of settlement.") (citations omitted).

In sum, the Settlement is reasonable in light of the substantial resources that can be conserved by avoiding the time, cost, rigor, and risk of prolonged litigation. Securities litigation

is a complex and evolving area of law requiring the devotion of significant resources. There is a high likelihood that the costs involved in shepherding a securities action like this one through the discovery process, pre-trial motions, trial, and appeals will far outweigh – and indeed subsume – any recovery that might be realized by the Settlement Class. Moreover, because the ABAT Defendants continue to deny any liability while asserting numerous defenses, the potential for any recovery remains highly uncertain. Most importantly, in light of the ABAT Defendants' apparent lack of assets against which any judgment may be brought, this Settlement represents reasonably certain monetary relief available to the Class.

### C.   The Settlement Is Entitled to a Presumption of Fairness Because It Is the Product of Arm's-Length Negotiations Among Experienced Counsel.

Finally, a strong initial presumption or fairness attaches to the proposed settlement if, as here, the settlement is reached by experienced counsel after arm's-length negotiations. Courts accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See Clark v. Ecolab Inc.*, No. 07 Civ. 8623(PAC), 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010); *In re Milken*, 150 F.R.D. at 66; *Chatelain*, 805 F. Supp. at 212.

A presumption of fairness is appropriate here. The Settlement was entered into by the parties in good faith, at arm's-length, and without collusion. *See, e.g.*, Walsh Decl. ¶¶ 4, 5. In addition, the parties' discussions leading to the Settlement were not held until after Lead Counsel had obtained an understanding of the strengths and weaknesses of the claims through its investigation and subsequent motion practice, including the filing of an amended complaint and briefing on Defendants' motions to dismiss. *See id.* at ¶¶ 4, 19.

Counsel for Lead Plaintiff and Defendants engaged in extensive negotiations to reach resolution of this action, including extensive correspondence, an exchange of information

15

relevant to the Settlement, and post-Settlement discovery. *See* Walsh Decl. ¶ 19. After settlement

negotiations, the Settling Parties finally submitted the Settlement Agreement to the Court for

preliminary approval, which was granted by order dated November 26, 2013. (Dkt. No. 120.)

As set forth herein, the proposed Settlement is reasonable according to the *Grinnell*

factors. Lead Counsel weighed the strengths and weaknesses of the relevant claims, defenses and

likelihood of recovery and, after extensive negotiations, reached an informed compromise. Under

these circumstances, Lead Plaintiff respectfully submits that the Settlement should be afforded

the presumption of fairness, and that final approval should be granted.

## II.      THE PLAN OF ALLOCATION IS APPROVED.

As part of the Order Preliminarily Approving Settlement and Providing for, the Court

preliminarily approved the Plan of Allocation that was published in the Class Notice. (Dkt. No.

120.) I now grant final approval of the Plan of Allocation for the purpose of administering the

Settlement.[1]

The Plan of Allocation is rational and reasonable. When evaluating the fairness of a Plan

of Allocation, courts give weight to the opinion of qualified counsel. "When formulated by

competent and experienced class counsel," a plan for allocation of net settlement proceeds "need

have only a reasonable, rational basis." *Global Crossing*, 225 F.R.D. at 462 (quotation omitted);

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y.

2001).

Here, the minimum claim amount set in the Plan of Allocation ($100) is necessary in

order to "save the settlement fund from being depleted by the administrative costs associated

with claims unlikely to exceed those costs...." *In re Gilat Satellite Networks, Ltd.*, No. CV-02-

---

[1] No distribution from the Settlement Fund will be made until the remaining claims against the Auditor Defendants are resolved. Once a final judgment is entered in this case against the ABAT Defendants, Lead Plaintiff plans to appeal dismissal of the claims against ABAT's auditors.

1510 CPS, 2007 WL 1191048, at *9 (E.D.N.Y. Apr. 19, 2007); *see In re Merrill Lynch & Co.,*

*Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484JFK, 2007 WL 4526593, at *12 (S.D.N.Y.

Dec. 20, 2007) (approving a $50 minimum cut-off amount "in order to foster the efficient

administration of the settlement"); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. at

463 ("Class counsel are entitled to use their discretion to conclude that, at some point, the need

to avoid excessive expense to the class as a whole outweighs the minimal loss to the claimants

who are not receiving their de minimis amounts of relief."). In addition, nothing about the Plan

of Allocation gives preferential treatment to Lead Plaintiff. *See Louie v. Kaiser Found. Health

Plan, Inc.*, No. 08cv0795 IEG RBB, 2008 WL 4473183, at *6-7 (S.D. Cal. Oct. 6, 2008).

 The Plan was formulated by Lead Counsel with the goal of reimbursing Settlement Class

members in a fair and reasonable manner. *See Global Crossing*, 225 F.R.D. at 462.

## III. THE SETTLEMENT CLASS IS FINALLY CERTIFIED FOR SETTLEMENT PURPOSES.

 The Second Circuit has long acknowledged the propriety of certifying a class solely for

settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 72-73 (2d Cir. 1982). Before

granting preliminary approval of a class action settlement, however, the Court should determine

that the proposed Settlement Class is a proper class for settlement purposes. *See Amchem Prods.,

Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Manual for Complex Litigation* § 21.632 (4th

ed. 2004). To certify a class, the Court must determine whether four threshold requirements of

Federal Rule 23(a) are met, namely, (1) numerosity, (2) commonality, (3) typicality, and (4)

adequacy of representation. *Amchem*, 521 U.S. at 613. Additionally, the action must be

maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3). *Id.* at 614. In certifying a Settlement

Class, however, the Court is not required to determine whether the action, if tried, would present

intractable management problems, "for the proposal is that there be no trial." *Id.* at 620; *see also*

Fed. R. Civ. P. 23(b)(3)(D). Here, the proposed Settlement Class meets all of the requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3).

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23 (a)(1). "Joinder is generally presumed to be impracticable when a putative class exceeds 40 members." *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 90 (D. Conn. 2010) (citing *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). Impracticable does not mean impossible, but "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007). As noted above, over 82,000 notices were sent to potential class members and 1,640 claims forms have already been received. This attests to the numerosity of the class and establishes that individual joinder is impracticable.

The proposed Settlement Class also meets the commonality requirement of Rule 23(a). Commonality is generally easily satisfied, as it is established so long as the plaintiffs can "identify some unifying thread among the [class] members' claims...." *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (citing *Cutler v. Perales*, 128 F.R.D. 39, 44 (S.D.N.Y. 1989)). The requirement is met "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). "Securities-fraud cases generally meet Rule 23(a)(2)'s commonality requirement." *Global Crossing*, 225 F.R.D. at 451-52 (citation omitted). Securities fraud class actions are "'essentially course of conduct cases' because 'the nub of plaintiffs' claims is that material information was withheld from the entire putative class in each action, either by written or oral communication.'" *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) (citation omitted).

Lead Plaintiff also meets Rule 23(a)'s typicality requirement because the claim "'arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). Like all other Settlement Class members, Lead Plaintiff was subject to the ABAT Defendants' alleged false and misleading statements in violation of Sections 10(b) and 20(a) of the Exchange Act.

Finally, Rule 23(a) requires that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry focuses "on uncovering 'conflicts of interest between named parties and the class they seek to represent.'" *In re Flag Telecom Holdings*, 574 F.3d at 35 (quoting *Amchem Prods.*, 521 U.S. at 625). Lead Plaintiff adequately represents the Settlement Class because he has no individual interests or claims that are antagonistic to the Class and has zealously represented the interests of the Class to date.

Additionally, Rule 23(g) states that the adequacy of Lead Plaintiff's counsel is determined by four factors: (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions; (3) counsel's knowledge of the applicable law; and (4) the resources counsel commits to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Pomerantz LLP has extensive experience and a stellar reputation in the field of class action and securities litigation. *See* Walsh Decl. at Ex. 3 (Pomerantz LLP firm resume). The firm has been appointed lead or co-lead counsel in many complex securities class actions and has recovered substantial monies for its clients and class members. Lead Counsel will continue to commit adequate resources to ensure that the Settlement Class is properly represented in this Litigation.

Finally, the proposed Settlement Class meets the predominance and superiority requirements of Rule 23(b)(3). To satisfy predominance, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof.'" *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008) (citation omitted). This inquiry "tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation." *Id.* (citation omitted); *see also Amgen, Inc. v. Connecticut Ret. Plans and Trust Funds*, --- U.S. ---, 133 S.Ct. 1184, 1196 (2013). There are questions of law and fact common to the Settlement Class that predominate over any individual questions, specifically whether the ABAT Defendants' alleged actions, which were centralized and uniform, violated federal securities laws and whether those violations were knowing or reckless. These common issues predominate over any individual issues.

"Together with predominance, the superiority requirement 'ensures that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Menkes*, 270 F.R.D. at 99-100 (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007)) (other citations omitted). "[C]lass treatment is often deemed superior in 'negative value' cases, in which 'each individual class member's interest in the litigation is less than the anticipated cost of litigating individually.'" *Menkes*, 270 F.R.D. at 100 (citation omitted).

A class action is also superior to other methods available for the fair and efficient adjudication of this controversy. Members of the Settlement Class are not likely to (and many do not have) an interest or the means to prosecute an individual case against the ABAT Defendants.

Additionally, concerns of efficiency and economy tip the scales in favor of litigating the issues in one suit before this Court.

Because the Settlement Class meets all of the requirements for certification under Rule 23(a) and (b)(3), the Court grants final class certification of the Class solely for the purposes of settlement.

## IV.    NOTICE TO THE SETTLEMENT CLASS COMPLIED WITH DUE PROCESS.

Rule 23(e) provides that "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).[2] The purpose of the notice is to "afford members of the class due process which, in the context of the [R]ule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters* v. *Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen* v. *Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)). A notice program must provide the "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *See Eisen*, 417 U.S. at 173 (citing Fed. R. Civ. P. 23(c)(2)). The Notice program utilized here, as set by the Preliminary Approval Order, meets this standard.

The Notice program was carried out by a third-party claims administrator, Berdon Claims Administration LLC (the "Claims Administrator" or "Berdon"), a nationally-recognized notice and claims administration firm, under the supervision of Lead Counsel. *See* Rosenbaum Aff. at ¶ 2. Berdon provided individual notice via first-class mail (the "Post Card Notice")[3] to each

---

[2] Moreover, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

[3] The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts. *See, e.g.*, *In re Mutual Funds Investment Litig.*, MDL No. 1586, 2010 WL 2342413, at *6-7 (D. Md. May 19, 2010); *In re AT & T Mobility Wireless*

member of the Settlement Class whose address was reasonably ascertainable. *Id.* at ¶ 3. Given

the small size of the Settlement, Lead Counsel sought to minimize notice costs by utilizing the

Post Card Notice, which provided the basic Settlement information and instructions for

Settlement Class members to access the highly-detailed Long Notice on the internet or request

that a Long Notice be mailed to them. *Id.* at ¶¶ 4, 5. In addition, Berdon caused the summary

notice to be transmitted over *PR Newswire* and published in *Investor's Business Daily. Id.* at ¶ 9.

The Notice amply describes the terms of the Settlement, the claims at issue, the releases,

the process for objecting and opting out of the Settlement, how to make a claim, all pertinent

deadlines, and the time, date and place of the Final Approval hearing. *Id.* at ¶ 10. The effort to

inform Class members of the Settlement, and their rights and obligations associated therewith,

more than satisfies due process requirements. *See In re Nissan Motor Corp. Antitrust Litig.*, 552

F.2d 1088, 1104-05 (5th Cir. 1977) (holding that notice must contain "an adequate description of

the proceedings written in objective, neutral terms, that … may be understood by the average

absentee class member").

## V.    REQUESTS FOR REIMBURSEMENT OF LEAD COUNSEL'S EXPENSES AND LEAD PLAINTIFF'S AWARD ARE APPROVED.

### A.    Lead Counsel's Expenses Are Reasonable and Were Necessary to Achieve the Benefit Obtained.

In order to maximize the recovery to the Class members, Lead Counsel has chosen to

forgo any request for attorneys' fees. Lead Counsel does request reimbursement in the amount of

$115,000.00 for out-of-pocket expenses reasonably and necessarily incurred in conjunction with

the prosecution of this action. The Walsh Declaration attests to the accuracy of Lead Counsel's

expenses. *See* Walsh Decl. at ¶¶ 21-23. It is well established that expenses are properly

---

*Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 973 (N.D. Ill. 2011) (holding that postcard notice was "more than sufficient" despite not providing detailed information about class members' options and deadlines because website and claims administrator via phone did).

recovered by counsel. *See, e.g., In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.").

Because the expenses were incurred with no guarantee of recovery, Lead Counsel had a strong incentive to keep them at a reasonable level, and did so. Lead Counsel made a concerted effort to avoid unnecessary expenditures and economize wherever possible. The expenses were incurred for items necessary to the prosecution of the action, and Lead Counsel submits, are reasonable. Moreover, Lead Counsel is requesting less than its total incurred expenses – further highlighting the reasonableness of counsel's request for its discounted expenses. *See* Walsh Decl. at Ex. 2 (Pomerantz LLP expense report). In addition, because the expenses were incurred for the benefit of the Class and are of a type generally reimbursed in the marketplace, they should be reimbursed from the common fund in the same manner as an individual client would reimburse counsel's expenses.

### a. An Award to Lead Plaintiff Is Reasonable.

The PSLRA permits Lead Plaintiff to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class...." 15 U.S.C. § 78u-4(a)(4). In accordance with the PSLRA, and the inherent powers of the Court, courts routinely grant reimbursement of substantial sums to lead plaintiffs and class representatives. *See Hicks*, 2005 WL 2757792, at *10 ("Courts in [the Second] Circuit routinely award such costs and expenses both to reimburse the named Plaintiffs for expenses incurred through their involvement

23

with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place.").

Here, Lead Plaintiff at all times adequately represented the Class. Lead Plaintiff has no individual interest or claim that is antagonistic to the Class and has represented the interests of the Class zealously throughout the litigation. Moreover, Lead Plaintiff devoted substantial time and effort to prosecuting the action, including time spent: reviewing pleadings, motions, and other documents; searching for and producing documents; traveling to New York to appear for a deposition; and communicating with counsel concerning the status of the case, and staying apprised of all developments in the case, including discussions about the Settlement. *See* Walsh Decl. at ¶¶ 24-26. The relatively modest request of an award in the amount of $3,000.00 to compensate Lead Plaintiff for his time and service to the Class in this case, as well as to function as an incentive to serve as lead plaintiff, is reasonable in this case.

## CONCLUSION

For the foregoing reasons, the Court hereby: (i) grants final approval of the Settlement

and Plan of Allocation; (ii) finally certifies the Settlement Class for purposes of the Settlement;

(iii) finds that notice to the Class satisfied due process; (iv) approves an award to the Lead

Plaintiff in the amount of $3,000; and (v) approves Lead Counsel's request for reimbursement of

expenses in the amount of $115,000. The Clerk of the Court is directed to remove Docket No.

130 from the Court's list of pending motions and to close the files (11-cv-2279, 11-cv-2354,

11-cv-2849, 11-cv-3098, and 11-cv-3729).


Dated: March 24, 2014

Colle M. Mal

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

25